Sides v. Paolano 18-1273 Good morning. May it please the Court? My name is Valdi Likul. I represent the plaintiff at the time of this hearing, and I'm here to discuss the case of Mr. Sides v. Paolano  Mr. Sides' complaint was dismissed as time-barred. It misapplied and misset the accrual date of his claims as well as the filing date. In addition, it also did not properly analyze and properly rule on the equitable date of his claims as well as September 28th, which is the date that Mr. Sides was sent by ambulance to Albany Medical Center because his condition had become pretty grave. That is not the date, however, on which Mr. Sides received treatment that he should have received in the care of the defense. But what wrongful act occurred after the 28th of September? Well, Your Honor, it is — it is — in a deliberate indifference claim, it is, in effect, the failure to act that is the issue. And so what we're arguing — He was taken for treatment on September 28th, and I didn't see him complaining of anything wrong that happened after. I mean, he was taken to get treatment and began getting treatment at the end of September, and yet he didn't file his claim for three years, just over three years later. So I'd like to understand what wrong happened after September 28th. The issue is one, as we focus it, on causation, and that is the treatment he should have received was the surgery. That was the treatment that the defendants knew about and should have provided and did not provide to him. But what could — what could any of the defendants have done that they failed to do after September the 28th when the plaintiff was delivered to the hospital? What they could have done before September 28th was provide him the treatment that they knew that he needed. But that's why — that's why September 28th is the date that the claim accrued. But that is not the — And they gave him to the hospital. Pardon me, Your Honor. That is not the date on which he actually received the treatment that they should have provided him. I understand that there is no case squarely on point here. But under the continuing violations doctrine, the accrual date is extended to the date that the person receives the treatment that he should have received. What exactly happened? My understanding was that the essence of his complaint was the delay from August 30th to September 25th. That was the gap, right, that one of the doctors commented on. That was a delay, a significant delay. Isn't that right? And so after that, leaving aside the question of negligence, you have to show deliberate indifference, don't you, in order for the — for this to be actionable? And I don't — I don't see even starting — going back to December — to September 25th, at that point, any — any argument of deliberate indifference. Steps were being made. Competent doctors were looking at the situation. Why wouldn't — why wouldn't the accrual date be at the latest, September 25th? Well, Your Honor, the deliberate indifference actually began on August 8th. That's the date on which the defendants received the medical report. That's fine. That's fine. But that's way, way earlier. I'm trying to see how you get to — get to anywhere near the filing of the complaint, three years before the filing of the complaint. Again, because the reason for the delay in treatment, the actual surgery and the transfusion was caused by the defendants. In other words, had they acted appropriately, Mr. Sides would have been able to get the treatment, and he did not do it, even after he is hospitalized and transferred to Albany Medical Center. That would sort of be a but-for-causation argument, going back to any period of significant delay, no matter how early it would be, because the chain of events would — would be triggered by that, and that would enable you to get — to get past the — I mean, if the delay had been a year earlier, for six months or something like that, then — but then thereafter, they — they showed no deliberate indifference or no negligence at all, you would argue still that there was — that the claim would accrue as of a later date. As of the date that — that the treatment is actually provided. That's the date. So the deliberate indifference continues up until the treatment is provided. That is our argument under the continuing violations doctrine. So that gets you to what? October 4th? It gets us to October 4th. So if I can turn to the filing date, Your Honor. The evidence on this point admittedly was muddled, but on a summary judgment motion, it should tilt in favor of the plaintiff. And the evidence here was that Mr. Sides filed his complaint not in September, in early October, right after he was — his complaint was notarized. And that notary date, it's uncontested with September 29th. There is a discussion of the October 15th. But the notary date isn't the — he never said that he filed it at that time. No, no, that's correct. The notary date doesn't really bear on when the document was filed, right? It does because his testimony is that he filed the document or gave it to the prison officials right after he got it notarized. But he also said he never submitted it, I think, until early October. He never mentioned a September date. He — he admitted that he did not submit in September, but that it was early October. You argue for October 1st. We argue for October 1st because that is early October and right after the date, right after the notary date. And admittedly, there is a discussion of October 5th. But Mr. Sides never admits that he filed. He gave it to prison officials on October 5th. And certainly, of course, there are no prison records here. And as the Supreme Court recognized in Houston v. Lax, it's — The date that the complaint was mailed, though, actually mailed, right, as — that's October 6th. Yes, but there's no — there are no prison records as to the date he handed it to prison officials. So that was the purpose of his deposition, was to try to recreate that. Right. And so, again, earliest — early — it's October, not — not later than October 5th, but right after September 29th, which would be October 5th. Did the district judge make a specific finding on that score? October 5th was the judge's finding. And independently of this, there's also the equitable tolling argument based on the — are there any comparable cases that deal with equitable tolling because a notary wasn't provided by the prison? There is one case which was cited by the court in its 1915 determination in a footnote, which is that — a case called Bell, which is cited in our brief. But — and there's — there's the other side, which is that he's not entitled to 24-hour notary services. The difference here — And notarization was not required, right? Well, all the materials available to him indicated that, in fact, it was, or at least he should try, because he was also seeking preliminary injunctive relief as part of his initial submission. And so the Prisoner's Handbook and the Northern District Pro Se office all says you should have it notarized and submit it with a notary if possible. And so what happens here, he submits the notary request. Sorry. What was the injunctive relief requested? He was requesting — He'd been covered by this time, right? Yes. But he was requesting prospective injunctive relief. In other words, that if this condition flares up again, that the hospital be — that the prison be directed to provide him. So your claim of equitable tolling is based upon the language of that particular rule or particular instruction, if possible? It is based upon that, as well as the prison's own directives, which require that he be provided with a notary within 72 hours. And in this case, had he been provided — There's no prohibition on filing without a notary, right? There is none. But, again, equitable tolling does not require that he show that it's impossible, only that, you know — He was misled or he was led to believe that he needed to do this. The materials do say — do strongly suggest that. And I think a reasonable person, especially a pro se, would understand that. The standard is only in rare and exceptional circumstances will we apply equitable tolling where extraordinary circumstances prevented a party from timely performing a required act. Do you think this qualifies? I do, Your Honor, because — simply because if within 72 hours they had given him the notary, he would have had enough time to file by the September 28th date. And in this case, they did not. And this Court's decisions in both Valdez and Veltri indicate that the government's failure to follow its own rules can be a basis for equitable tolling, which is what happened here. The magistrate judge and the district court never considered the issue of the failure to provide the notary in a timely way as a basis for equitable tolling, did they? That's correct, Your Honor. The Court said it was waived. But, in fact, in the record, Mr. Seitz made a submission saying that he could not file because his notary was delayed. I thought that the only thing that the lower court or that the district court considered was whether the failure to provide medical records in a timely way was a basis for equitable tolling. That's correct. And I believe Mr. Seitz submitted his own brief in this matter on that issue, which is not repeated in our brief. But, yes, the Court did not reach that issue considering it waived, but clearly it was not. And I think it's page 832 of the record where he notifies the Court of the reason for the delay. All right. Thank you very much. You have two minutes for rebuttal. We'll hear from Mr. Woods for the State. Good morning. May it please the Court. Patrick Woods on behalf of defendants. I think it's probably best if I pick up on the equitable tolling point. The suggestion in the reply brief, and again here today, that even if there was a mistake as to what the filing requirements were, that that would somehow rise to the level of the extraordinary circumstances required for equitable tolling is just not the law of this circuit. In Watson, which is cited in our brief, and in a number of other cases, Jenkins v. Green, that's 630 Fed Third 298. Simildon v. Senkowski, that's 273 Fed Third 138. None of those cases actually deal with the failure to provide the notary. They don't deal specifically with the failure to provide a notary because of a different problem, which is that in order to qualify for equitable tolling, whatever it is has to have actually prevented the filing. There is no requirement for a filing in Federal court for a complaint that it be notarized. But if he was misled by materials that the prison makes available to him about the requirements for filing when you're seeking a preliminary injunction, why is it reasonable to, you know, isn't that extraordinary actually, preventing him from filing in an effective way? I would say no, Judge, for a couple of reasons. First is that if we were talking about the filing of the preliminary injunction, maybe, but we're not talking about the filing of the preliminary injunction paperwork. We're talking about the filing of the complaint. He could very well have filed the complaint and then filed the PI paperwork two or three days later. So the connection between those two simply doesn't exist. But moreover, if you look at his deposition testimony, both sides have produced materials that are available to plaintiffs, but there's no evidence in this record he actually looked at them. From his deposition testimony, it's fairly clear that he's relying on advice from other prisoners on the block. And this Court has held in some of the prior cases that even where someone's acting under advice of counsel and counsel gets the law wrong, that that's not a basis for equitable tolling. Roberts. Neither the district court nor the magistrate judge considered the issue of whether this was equitable tolling. Isn't that right? That's correct. They don't discuss it in either decision. I don't think that prevents this Court from reaching the question if it wants to. Maybe it changes the standard of review. Normally, it would be abuse of discretion. But if it not having been reached, I think the Court could resolve it on that basis, especially considering it patently has no merit, in that there's no requirement that it be notarized in order for it to be filed at all. Would, I guess, sending it back to the magistrate or district court under these conditions, would it be your position that it would not be necessary or required or even necessarily good practice? It would waste judicial resources because we're in the same position to make the decision. Precisely, Judge. I mean, the Court certainly has the power to do that if it wants to, but I think it would be a tremendous waste of judicial time. While I'm sure Judge D'Agostino would say wonderful and very insightful things, the record was fully developed below. These issues were litigated. Three of them were not ruled on. Remind me again what your accrual date is. We have not pegged a specific one. I would think that it would be September 25th. In our position here, we've tried to be sort of as generous as possible for purposes of summary judgment as to what the latest accrual date could have been. You know, in your brief, you don't really argue with the date of September 28th. No, Judge. That's the last date that any one of these defendants had any interaction. And so we're really dealing with three days as to whether there should be equitable tolling for three days from September 28th to October 1st, because construing the evidence in the light most favorable to the plaintiff, October 1st is the day when he handed it to prison authorities, early in October. Correct, Judge. So the question is whether he was delayed by sufficiently by equitable tolling for three days, an issue that neither the magistrate judge nor the district court even addressed. Well, I think there's a number of other issues, because in order to even get to the accrual date of September 28th. No, no, but I thought you were prepared to argue the case on September 28th, October 1st, three days. Yes, Judge. And he's not entitled to equitable tolling. So then the question comes down to whether there's equitable tolling for three days, an issue that neither the magistrate judge nor the district court addressed. Well, I would say that it does not come down solely to that issue, because there's three other bases for affirmance here. And there's also the question of whether. Which the magistrate judge and the district court didn't address. No, but they're pure questions of law. There's a full record below. And there's no reason that this Court should have to send it back and bring it back up again, which it undoubtedly will, after there's a decision below it. I'm sorry. Just to clarify the record. So the district court or the magistrate judge, from what I see, did consider equitable tolling, right, but not the notarization? But only with respect to the medical records. Only, okay, okay. That's correct. He considered equitable tolling on the basis that the delay in receiving the medical records, several in the middle of the statutory period, did not qualify for equitable tolling, because it couldn't have prevented filing, because there was so much time. But the argument we're hearing today was also presented? I believe. Is that correct or not? We have not argued that it's unpreserved. I'm not, I'm actually not particularly familiar with where he believes the plaintiff argued it below, but given the standard at which this Court reviews pro se submissions, we didn't want to go down that road. Thank you. If I could say. Please. I'd just like to turn to a few of the other issues, because one is whether the continuing violation doctrine even applies at all. Under this Court's decision in Shomo, there's two things that are required. One, there's a policy of deliberate indifference that's required, and then there has to be an act of deliberate indifference within the statutory period. I don't see a policy here. There really isn't evidence on this record that there's a policy. There's a few times that he meets with different doctors or nurses where they either continue to monitor him or they provide him treatment. He may not think that that's adequate treatment, but that doesn't rise to the level of deliberate indifference. Similarly, as Judge Carney, I think, was alluding to, the rule is that there has to be an act of deliberate indifference within the statutory period. And there isn't one here. There's no – there really couldn't be. We've used the September 28th date, but really sending him to the hospital isn't an act of indifference. Getting more blood tests on September 25th isn't an act of indifference. It seems to me that the last possible act of indifference by any defendant on this record really is even further back in time. So it's difficult to see how there's a policy that extends, and it's further difficult to see. Roberts. When you say further back in time, I'm not sure what time you're talking about. I mean, we have to be a little more specific than that. I thought August 30th, there was an appointment with Paolo Liano was canceled. Correct, Judge. And then it was rescheduled for several weeks later. But they already had – he had consented to surgery. They were planning on surgery at that point. But then there was this period of delay. So that arguably would be indifference at that point, whoever canceled the appointment. Correct, Judge. But whoever canceled the appointment isn't one of the three defendants in this case. That's an unknown person who works at the Department of Corrections. The evidence, unrebutted evidence in this case is that none of these defendants even were aware that the appointment had been rescheduled at that time. The only concrete date where there's something that could arguably even have been medical negligence is August 8th. The complaint was initially reviewed by the district court for purposes of determining whether it was frivolous as time barred. And the court didn't dismiss it precisely because the plaintiff said that the plaintiff asked for the notary on September the 21st. And the district court thought that that was a sufficient showing at that point of equitable tolling. What changed between then and the time when the district court then granted summary judgment and didn't even consider the issue of the notary? My understanding, and perhaps I'm misremembering the earlier order in the case, but I thought that there were a number of issues as to what the appropriate accrual date were that were also discussed in that footnote. And I think that's part of what carried forward. Maybe I'm misremembering. But plainly one of the issues was that the Petitioner had sought a notary on September the 21st, 2015. And again, Judge, ultimately, I don't think that it hinges on, I don't think the outcome hinges on whether or not the magistrate judge should have considered it later because it has no merit, and this Court can easily hold that. Whether or not he received the notary, and there's no dispute that there was a delay in receiving the notary, he didn't need the notary in order to file. Nor was the DOCS directive, for example, that requires notary services particularly relevant here. There are things that need to be filed that require notary services, filings in State court and filings in this court, filings in district court that require them. But a complaint is not one of them. I see you. Sotomayor. Thank you. Thank you very much. We'll hear from Ms. Newell-Coole. Thank you. Turning to the issue of the equitable tolling, on page 832 of the record, Mr. Syed submits a letter to the Court with his initial complaint and preliminary injunction, and he states, quote, ''I put in for a notary on 9-21-15, but it was delayed by this facility until the 29th.'' So that is where he raises the issue that the Court flags at the initial screening stage but then doesn't revisit again. With respect to filing, his ability to file both the complaint separately from the preliminary injunction, I think that certainly asking a pro se litigant to sort of make that distinction in the rules is maybe a bit much. Secondly, or thirdly rather, the record here was not fully developed. This issue was out there. At the very least, there should have been a hearing, perhaps even unquestioning Mr. Syed as to what he relied upon and why he believed that he needed the notary. Did he rely on a northern district's pro se manual or some other document? With respect to the issue of the notary directive, in the Veltri case, which was an example, there was some kind of a booklet that was sent to these ERISA plaintiffs and that had that information. But the specific notice was required by the Federal regs, and this Court found that failure to provide that specific notice was, in fact, the reason for equitable tolling. So the reliance on the regulations is important, because somebody in Mr. Syed's position is entitled to rely on the 72-hour notice period. With respect to the qualified, excuse me, the continuing violations issue of lack of policy, I think what the defendants argue is that the defendants must have taken a particular affirmative act in order to have continuing violation. But that's not the case. It is the failure to act in the face of knowledge. And in Shomo, for example, where this Court applied for the first time continuing violations to the Eighth Amendment context, Mr. Shomo, the plaintiff in that case, was paralyzed on one side. And the facility was supposed to help him with his activities of daily living and did not do that. That was the continuing violation. But again, Shomo says that you have to have the existence of an ongoing policy of deliberate indifference. Correct. These needs and some not, right? That's correct. So knowledge So what would you rely on for the policy? The policy is knowledge of the life-threatening anemia and the need for surgery and then not following up and not taking the necessary steps to provide care, which is more than malpractice. It's actually an element, there's an element of recklessness there. Well, it's not a policy rather than just a violation of, you know, a possible deliberate indifference. Doesn't mean there's a policy of deliberate indifference in these cases. The policy doesn't have to be formal. You can show the policy through actions. Sure. So in this particular case, you have the same defendants, most notably the two doctors, Dr. Miller and Paloano, who knew this and Mr. Seitz kept going to them and kept going to the infirmary and saying, this is how I'm feeling, this is tortuous, and they don't take the appropriate steps. In fact, at one point, they provided them. But they do pay attention to him. They're not deliberately indifferent to his needs. Well, they are, in the sense that they are. No, you disagree with their judgments, but not whether they're deliberately indifferent. Your Honor, respectfully, when a blood test shows that he has a life-threatening condition and the answer is wait for surgery and here's some ibuprofen, which actually acts as a blood thinner and makes it worse, it's not just – there's not just a disagreement about care. That is a level that is beyond that. There is a gap between that. And there's no – in this particular case, the defendants have not presented any evidence that there was an alternative reasonable course of action that they took with respect to his treatment. Remember, his condition gets so bad that eventually they have to rush him to the hospital. He's been in their care for years. He's been complaining about these symptoms for months. That, at least on a summary judgment motion, where the facts should be construed in favor of the plaintiff, that at least would allow a fact finder to find deliberate indifference. Thank you very much. Thank you. Thank you for your arguments. We'll take the matter under advice.